# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RAFAEL CLAUDIO-ZAYAS,

     Petitioner,

     v.

UNITED STATES OF AMERICA,

     Respondent.

**Civil No. 14-1402 (ADC)]**
**[Related to Crim. No. 11-388-21 (ADC)]**

## OPINION & ORDER

On April 22, 2013, petitioner Rafael Claudio-Zayas ("Claudio") was sentenced, after pleading guilty, to one count charging a conspiracy to possess with intent to distribute at least 3.5 kilograms but less than 5 kilograms of cocaine within 1,000 feet of a protected location, 21 U.S.C. § 841(a)(1), 846 and 860. *United States v. Rafael Claudio-Zayas*, Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF Nos. 2506**.[1] Claudio was sentenced to 120 months in prison, to be followed by 8 years of supervised release. *Id*. Claudio did not appeal his conviction. *See United States v. Rafael Claudio-Zayas*, Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013).

Claudio now timely petitions the Court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. **ECF No. 1**. In his habeas petition, Claudio claims that his plea was involuntary because his defense counsel provided ineffective assistance during plea negotiations. First,

---

[1] On April 24, 2013, the Court amended the judgment to correct the date on which the offense ended: October 6, 2011. **ECF No. 2516**; *see* Fed. R. Crim. P. 36.

Claudio claims that the drug quantities stipulated in the plea agreement "over-stated the actual amounts he could allegedly have been criminally liable for." **ECF No. 1** at 8. Second, Claudio claims that his defense counsel did not advice him adequately about an allegedly erroneous 2-level firearms enhancement that the Court used to calculate his sentence. *Id.* at 15. Third, Claudio claims his defense counsel erroneously advised him to accept the plea agreement in exchange for the dismissal of Count Two, because Claudio believes that he could not have been convicted of Count Two—conspiracy to use, carry, possess, and discharge firearms in the furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(A)(ii), (c)(1)(A)(iii), and 924(o). *Id.* Finally, Claudio claims that he signed his plea agreement because his defense counsel allegedly told him that he would be eligible for the Residential Drug Abuse Program ("RDAP"). **ECF No. 1** at 5. The government opposes Claudio's petition. **ECF No. 10**.

## I.      Legal Standard.

A petitioner in federal custody may move to vacate, set aside, or correct his sentence by showing that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  To warrant post-conviction relief, a petitioner must show that his sentence "reveal[s] fundamental defects which, if uncorrected, will result in a complete miscarriage of justice." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (quotations, citation, and alterations omitted). Ultimately, "[t]he burden of proof is on the petitioner." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (citing *David*, 134 F.3d at 474).

## II.      Preliminary matters.

### A.      Procedural default.

Because Claudio failed to file a direct appeal, his claims would ordinarily be procedurally defaulted absent a showing of cause and prejudice for the default. *See Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (explaining that procedural default occurs when a petitioner fails to raise a claim in a timely manner at trial or on direct appeal).  In his petition, Claudio does not argue that there is cause and prejudice for his failure to file a direct appeal of his sentence. Claudio simply asserts that his trial counsel did not object to the sentencing enhancements that he received, but, even if trial counsel's failure to object could constitute cause, this would still not excuse his failure to raise these objections on direct appeal.

However, the government has waived this procedural-default argument because it did not raise it in its response.[2] *See* **ECF No. 10**. Moreover, even though "a district court has the discretion, in a section 2255 case, to raise questions of procedural default sua sponte, even when the government has filed a reply and eschewed any reference to that defense[,]" due process would require the Court to give defendant notice and an opportunity to be heard on the issue of procedural default. *Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005). Nonetheless, because the Court can dispose of petitioner's claim for habeas relief on the merits, it will not raise the issue on its own accord.

---

[2] The government only argued that Claudio's habeas petition violates his plea agreement, where he agreed to not appeal. Out of an abundance of caution, the Court will not summarily dismiss the habeas petition as procedurally defaulted.

     **B.**     **Petitioner does not request adequate habeas relief.**

The government first opposes Claudio's motion on the ground that Claudio asks for "the modification and reduction of his sentence . . . while keeping the rest of his guilty plea and the bargain in place." **ECF No. 10** at 6. Indeed, Claudio's petition shifts between asserting that he only seeks "a chance to be sentenced according to the factors that everyone agrees should apply . . . " **ECF No. 1** at 9, and that, if not for his defense counsel's allegedly deficient performance, he "would have insisted on going to trial." **ECF No. 1** at 4. Nevertheless, courts must liberally construe pro se habeas petitions, and the Court will construe Claudio's petition as a challenge to his conviction's validity. *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Voravongsa v. A.T. Wall*, 349 F.3d 1, 8 (1st Cir. 2003)).

     **C.**     **Evidentiary hearing,**

"[E]videntiary hearings on § 2255 petitions are the exception, not the norm." *DeCologero v. United States*, 802 F.3d 155, 167 (1st Cir. 2015) (quoting *United States v. Moreno-Morales*, 334 F.3d 140, 145 (1st Cir. 2003)). A district court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *DeCologero*, 802 F.3d at 167 (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Ultimately, "a hearing is unnecessary when the section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." *McGill*, 11 F.3d at 225-26 (internal quotation marks and citation omitted).

In particular, "evidentiary hearings on claims of attorney misrepresentations [are] granted," despite the existence of plea-colloquy statements denying the substance of those claims, "'only when the allegations [a]re highly specific and . . . accompanied by some independent corroboration.'" *Hernández-Hernández* v. *United States*, 904 F.2d 758, 762 (1st Cir. 1990) (quoting *United States* v. *Butt*, 731 F.2d 75, 80 n.5 (1st Cir. 1984)). In the absence of such specificity and corroboration, "allegations need not be accepted as true [when] they . . . contradict the record." *DeCologero*, 802 F.3d at 167 (quoting *Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007)).

As discussed below, Claudio's habeas petition is facially inadequate and lack any independent corroboration. More importantly, the record conclusively shows that petitioner is not entitled to habeas relief. Thus, the Court denies petitioner's request for an evidentiary hearing. Because the Court has not held an evidentiary hearing, the Court will construe petitioner's allegations as true to the extent that they are not contradicted by the record, inherently incredible, or state conclusions instead of facts. *See Owens*, 483 F.3d at 57.

### III.    Ineffective assistance of counsel in the context of a guilty plea.

"A defendant claiming. . . that counsel's assistance was ineffective at the plea-bargaining stage, must meet the two-part test laid out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." *United States v. Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016). Thus, a petitioner "has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings

would have been different." *Smullen v. United States*, 94 F.3d 20, 23 (1st Cir. 1996) (citing *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)); *López-Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990)).

To succeed, the petitioner bears a heavy burden of proof. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996). "The *Strickland* test imposes 'highly deferential' judicial scrutiny of counsel's performance and 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *López–Nieves,* 917 F.2d at 648 (quoting *Strickland,* 466 U.S. at 689). "Thus, in order to establish deficient performance, a defendant must show that, 'given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" *United States v. Rivera-Ruperto*, __ F.3d ___ (1st Cir. 2017) (quoting *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010)).

The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). In other words, a guilty plea can only be attacked on collateral review on the basis that it was involuntary and unintelligent. *Id.* "In the guilty plea context, [prejudice] means [a petitioner] has to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Moreno–Espada v. United States,* 666 F.3d 60, 64 (1st Cir. 2012) (internal quotation marks omitted).

In reviewing a guilty plea, statements made under oath during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Court "is entitled to give weight to the defendant's statements at his change-of-plea colloquy absent a 'good reason for disregarding them[,]'" and "a defendant's 'declarations in open court carry a strong presumption of verity.'" *United States v. Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011) (quoting *United States v. Torres–Rosario*, 447 F.3d 61, 67 (1st Cir. 2006); then quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 (1977)). Specifically, those statements are "conclusively established" unless the petitioner "offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statements," which, in the context of an ineffective-assistance-of-counsel claim, means making allegations sufficient to state such a claim and creating material issues of credible fact. *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (quotation and alteration omitted).

Accordingly, the Court must weigh Claudio's claims of ineffective assistance against the statements he made during his change of plea hearing. This creates a high bar for Claudio to show that his counsel's alleged errors "had some conceivable effect on the outcome of the proceeding," *Strickland*, 466 U.S. at 693, and that he would not have pled guilty if not for his counsel's alleged errors.

## IV.    Change of plea hearing.

On December 20, 2012, Claudio appeared before Magistrate Judge Silvia Carreño-Coll pursuant to Federal Rule of Criminal Procedure 11 and entered a plea of guilty to Count One of the indictment. *See* Crim. No. 11-388-21 (ADC), **ECF No. 2034**. That same day, Magistrate Judge

Carreño-Coll issued a Report and Recommendation recommending that the Court accept Claudio's guilty plea. *Id.*, **ECF No. 2034**. Neither party filed objections, and, on January 15, 2013, the Court adopted the Report and Recommendation. *Id.*, **ECF No. 2199**.

During the Rule 11 colloquy, Claudio—while represented by counsel and with an interpreter's assistance—testified that he had discussed the indictment with his attorney, fully understood the charges, did not need the Court to read the indictment again, and was satisfied with the legal representation he had received. *Id.*, **ECF No. 3069** at 4:24-5:14. When asked about the plea agreement, Claudio testified that the documents had been translated into Spanish and explained to him, and that he fully understood them. *Id.* at 7:13-18. Claudio also testified that no one had made him any promises besides those that were included in the plea agreement. *Id.* at 7:23-25. He testified that he and his attorney had signed the plea agreement and the statement of facts attached to it, placing their initials on each page. *Id.* at 8:7-24. He further testified that by initialing and signing each portion of the agreement, it was his intention to tell the Court that he understood and agreed with everything contained in those documents. *Id.* at 8:7-24.

 Prompted by the Court, the prosecutor informed the Court that the plea agreement stated that Claudio "will plead guilty to Count I of the indictment and stipulate to possession with intent to distribute at least 3.5 kilograms but less than 5 kilograms of cocaine." *Id.* at 11:5-16.

Regarding Claudio's guideline sentence computation, the plea agreement calculated a base offense level of 30, based on the stipulated drug amount, and a 2-level enhancement under

Guideline Section 2D1.2(a)(1) because the offense was committed near a protected location. *Id.* at 11:21-23. The plea agreement also provided for an additional 2-level firearms enhancement pursuant to Guideline Section 2D1.2(b)(1).[3] *Id.* at 11:21-23; *see* **ECF No. 2015** at 5. Finally, the plea agreement provided for a 3-level reduction for Claudio's acceptance of responsibility under Guideline Section 3E1.1(a) and (b), for a total offense level of 31. *Id.* at 11:24-12:1.

When asked if the proffered calculation and drug quantities were those he had agreed to accept, Claudio replied "yes." *Id.* at 12:3-7. The Court then explained to Claudio that he was agreeing to be held responsible for more than 3.5 but less than 5 kilograms of cocaine, and that the applicable penalties were a term of imprisonment of between 5 and 40 years. *Id.* at 13:21-14:1. Claudio replied that he understood these terms. *Id* at 14:8. He further declared that he had discussed with his defense counsel how the Sentencing Guidelines would apply to his case, including that the presiding judge is required to consider, but not necessarily follow their recommendations. *Id.* at 16:1-6.

The Court further explained the charges against Claudio by explaining the essential elements of the charged offense:

---

[3] The Court applied the November 1, 2012 edition of the United States Sentencing Commission Guidelines Manual. Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 3006.** As discussed below, throughout plea negotiations and the plea colloquy, the plea agreement and the parties erroneously identified guideline section 2D1.2(b)(1) as the source of the 2-level firearm enhancement that the parties stipulated to. While discussing the plea agreement at the change of plea hearing, the transcript indicates that "[s]ince the defendant possessed firearms, there's an additional two level enhancement pursuant to Guideline Section 2D1.2(b)(1)." Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 3069** at 11:21-23. The plea agreement also indicated that a 2-level increase was warranted under USSG § 2D1.2(b)(1), because defendant possessed a firearm. *Id.*, **ECF No. 2015** at 5. However, as petitioner correctly points out, Section 2D1.2(b)(1) does not exist in the 2012 Sentencing Guidelines. As the Pre Sentence Investigation Report clearly indicates, a 2-level firearm enhancement was warranted pursuant to USSG § 2D1.1(b)(1)—not Section 2D1.2(b)(1)—as a special offense characteristic because a firearm was possessed in the commission of the charged offense. *Id.*, **ECF No. 2459** at 18.

THE COURT: Okay. I understand that you intend to plead guilty to Count I of the indictment. Count I charges you from in or about March 2007 and continuing up to October 6th, 2011, in the District of Puerto Rico, you and others conspired, knowingly and intentionally, to possess with the intent to distribute narcotic controlled substances; specifically, cocaine, crack, heroin, marijuana, oxycodone, and all of this within 1,000 feet of two public elementary schools in Luis Llorens Torres Public Housing Project.

For the Government to prove this, the Government would first have to prove—have to show that there was a conspiracy. A conspiracy is an agreement between two or more persons to do something that is against the law. And that this was done knowingly, which means that you were aware of what you were doing and this event did not occur by mistake, or by ignorance, or by accident. And that you did these things intentionally, which means with a specific purpose of doing something. And, again, not by mistake or accident. And that these things you did were done unlawfully, which, of course, means contrary to law. And possession with intent to distribute means that you have something and you intend to transfer that something to someone else; that something being the controlled substances, the narcotic drugs.

*Id*. at 19:2-24.

After the Court carefully explained the elements of the charged offense, Claudio testified that he understood them. *Id.* at 20:23.

Finally, during the plea colloquy, the government made the following proffer of evidence:

Discovery has been provided to the defendant. As to Mr. Claudio, he would acknowledge that on or about March 2007 continuing up to in or about October 2011, he did knowingly and intentionally combine, agree and conspire with others to distribute and possess with intent to distribute at least 3.5 kilograms but less than five kilograms of cocaine at a drug point located in the area under the control of the "Calle 4" gang within the Luis Llorens Torres Public Housing Project and within 1,000 feet of the real property comprised of two elementary public schools; that is, the Luis Llorens Torres Elementary public school and the Maria Martinez De Perez Almiroti Elementary public school.

The defendant, as a member of the above-mentioned drug trafficking organization, was a supplier of cocaine, decks of heroin, and marijuana, that were

distributed for financial gain at the drug point located in the area under the control of the "Calle 4" gang within the Luis Llorens Torres Public Housing Project. The defendant also supplied, possessed and carried firearms in furtherance of the drug trafficking crime charged in Count I.

*Id.* at 23:5-24.

When asked if he believed those facts to be true and accurate, Claudio testified that he understood the statements made by the government and believed them to be true and accurate.

*Id.* at 24:15-20.

**V.      Claudio's claims of ineffective assistance**

     **A.      Claudio could have been found guilty of Count Two—conspiracy to possess a firearm during a drug trafficking crime.**

Claudio believes that his defense counsel provided ineffective assistance by advising him to accept the plea agreement even though he allegedly could not have been convicted of Count Two, which the Court dismissed under the terms of the plea agreement. Claudio argues that Count Two only charged him with "being a 'supplier' of 'drugs' and 'firearms' without any mention of 'possessing', 'carrying' firearms in furtherance of the drug trafficking crime charged in count one." **ECF No. 1** at 15. Accordingly, Claudio believes that "supplying firearms to a conspiracy does not comport with the statutory language of § 924(c)." *Id.*

However, the indictment did not merely accuse Claudio of "supplying" firearms, without more precision. Instead, Count Two specifically charged that Claudio, along with his co-conspirators, did "knowingly possess, use, carry, brandish, and discharge firearms . . . in furtherance of, or during and relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c) and (o). Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 3** at 23-25.

As the government correctly points out, petitioner's understanding of the law applicable to Count Two is flawed. **ECF No. 10** at 11. 18 U.S.C. § 924(o) establishes the penalties for a person who conspires to commit an offense under 18 U.S.C. 924(c)(1)(A), which makes it illegal for any person to use or carry a firearm in furtherance of a drug trafficking crime. "Where a defendant is charged under 18 U.S.C. § 924(o) 'the jury [does] not even need to find that [the defendant] himself ever used or possessed a firearm in furtherance of the drug conspiracy. It would be sufficient to find that he was part of an agreement to do so." *United States v. Santos-Rivera*, 726 F.3d 17, 25 (1st Cir. 2013) (quoting *United States v. Flores–de–Jesús*, 569 F.3d 8, 30 n.14 (1st Cir. 2009)).

The record before the Court provides ample support to conclude that, as Claudio himself admitted, the government could have proven facts sufficient to establish beyond a reasonable doubt and for a jury to convict him of conspiracy to possess a firearm in furtherance of a drug trafficking crime. In describing the roles of the members of the conspiracy, Count One of the indictment charged Claudio with being a supplier of controlled substances, specifically cocaine base, cocaine, heroin and marijuana, adding that he "would also supply firearms to the members of the organization in furtherance of the drug trafficking business . . . " Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 3** at 16. In his plea agreement, Claudio admitted to supplying, possessing and carrying firearms in furtherance of the drug trafficking crime charged in Count One. *Id.*, **ECF No. 2015** at 11. Finally, in his plea colloquy, Claudio clearly admitted that he "supplied, possessed and carried firearms in furtherance of the drug trafficking crime charged in Count I." *Id.*, **ECF No. 3069** at 23:5-24:20.

Thus, his defense counsel did not err—much less provide ineffective assistance—by advising him that he could be convicted on Count Two. According to the facts that he admitted in open court, which in turn, were the facts supported by the evidence provided in discovery, a reasonable fact finder could have found defendant guilty of Count Two, charging a conspiracy to possess and distribute firearms in the furtherance of a drug trafficking conspiracy.

**B.        The 2-level firearm enhancement**

Claudio claims that when he asked his defense counsel about the 2-level firearm enhancement included in the plea agreement, counsel explained that it "was a statutory permitted allocation of 2 [levels] for possession of firearms, and thus, that he would be stipulating to that on page 11, because the indictment clearly charged him with possession of [a] firearm." **ECF No. 1** at 5. Claudio claims this constitutes ineffective assistance of counsel because the Court lacked a factual basis to apply the 2-level firearm enhancement.

First, Claudio argues that, because "supply" does not explicitly include the statutory element of possession of a firearm as required by 18 U.S.C. § 924(o), the Court could not have applied a 2-level enhancement for possession of a firearm. This argument misses the mark, and it conflates the 2-level firearm enhancement with the dismissed count for possession of a firearm in relation to a drug trafficking crime. The two 2-level enhancement that the Court applied was not in relation to 18 U.S.C. § 924(o), as Claudio was not convicted of that crime. Instead, the two-level firearms enhancement was applied as a specific offense characteristic in light of Section 2D1.1(b)(1) of the 2012 Sentencing Guidelines.

Second, Claudio repeatedly argues that he was sentenced according to a nonexistent section of the sentencing guidelines, section 2D1.2(b)(1). *See* **ECF Nos. 1, 13**. Claudio is correct in that section 2D1.2(b)(1) did not exist in the 2012 Sentencing Guidelines, and his confusion regarding the firearm enhancement is understandable. Indeed, in the plea agreement and the change of plea colloquy, the government and his defense counsel mislabeled the sentencing guideline section applicable to the 2 level firearm enhancement as Section 2D1.2(b)(1), instead of Section 2D1.1(b)(1). For example, during his change of plea hearing the government stated that: "Since the defendant possessed firearms, there's an additional two level enhancement pursuant to Guideline Section 2D1.2(b)(1)." Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 3069** at 11:21-23. The plea agreement also indicated that a 2-level increase was warranted under USSG § 2D1.2(b)(1), because defendant had possessed a firearm. *Id.,* **ECF No. 2015** at 5. However, the Pre-Sentence Investigation Report clearly indicates that, as a special offense characteristic, a 2-level increase is warranted pursuant to USSG § 2D1.1(b)(1), because a firearm was possessed during the commission of the charged offense. *Id.,* **ECF No. 2459** at 18.

Section 2D1.1(b)(1) section calls for a 2-level adjustment "[i]f a dangerous weapon (including a firearm) was possessed." This is a specific offense characteristic for Claudio's offense of conviction, 18 U.S.C. 841(a)(1), 846 and 860, which carries a base offense level of 30. *See* Crim. No. 11-388-21 (ADC) (D.P.R. April 22, 2013), **ECF No. 2459 at 18**. Count I of the indictment charged that "the object of the conspiracy was to possess with the intent to distribute and to distribute cocaine. . ." and that as part of the conspiracy the defendants "would purchase, possess, carry, use, brandish and discharge firearms in order to maintain control over the drug

point and to protect themselves, their drugs, and their drug proceeds . . ." *Id.*, **ECF No. 1** at 13. Furthermore, the facts that Claudio admitted to in the plea agreement and his plea colloquy support this enhancement, and Claudio expressly agreed to a 2-level firearm enhancement in his plea agreement and plea colloquy. Finally, during sentencing, the Court asked about the PSR computation, and neither Claudio nor his counsel objected.

In sum, defense counsel did not err by advising Claudio that a 2-level firearms enhancement was warranted, even though the plea agreement and plea colloquy identified the wrong section of the sentencing guidelines. This claim is based on the fact that the parties kept citing the wrong section, but the underlying conduct, evidence in support and understanding of its applicability was clear. Under Section 2D1.1(b)(1), a 2-level enhancement was warranted, and Claudio was at all times placed on notice about the reason for the enhancement: he had used, carried and/or supplied firearms in furtherance of the drug trafficking conspiracy. This is a simple scrivener's error, and Claudio was placed on notice—in more than one occasion—that a 2-level increase was warranted because a firearm was used in the commission of the crime of conviction. Actually, defendant did stipulate to the same. Accordingly, defense counsel did not err by failing to object to the 2-level firearm enhancement because it was explicitly included in the plea agreement, discussed at length in the plea colloquy, and discussed during Claudio's sentencing. Moreover, "[e]ven if the prediction had been inaccurate, an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1994).

### C.    Drug quantity

Claudio claims that he asked his defense counsel why he was being held responsible for the drug quantities attributed to the entire conspiracy—which began in March of 2007, if he had been incarcerated until December 7, 2007. Claudio also claims that, in response, his counsel erroneously advised him "that it did not matter what really happened, because the government can create any amount they wanted and that he had no choice in the matter, to just sign the plea." *Id.* Claudio thus claims that the plea agreement "over-stated the actual amounts he could allegedly have been criminally liable for." **ECF No. 1** at 8. In support, Claudio argues that he joined the conspiracy "way after it had started, and left way before it ended, that he was not a leader or enforcer, could not be held liable, responsible, or accountable at sentencing for the acts of co-conspirators, when he did not foresee them or expressly agree to them." **ECF No. 1** at 8. Thus, he continues, he "may be responsible as a matter of substantive conspiracy law, but not as a matter of sentencing law." *Id.*

Even taking Claudio's assertions at face value, they are insufficient to establish a claim for ineffective assistance of counsel because they do not contradict the statements Claudio made in open court, under oath, during his change of plea colloquy. On two separate occasions—when the government explained the terms of the plea agreement and when the Court explained the facts that Claudio was admitting to—Claudio accepted responsibility and admitted that he knowingly and intentionally conspired, from March 2007 to October 2011, to distribute and posses, with the intent to distribute, at least 3.5 but less than 5 kilograms of cocaine. "A defendant is normally bound by the representations that he himself makes in open court at the

time of his plea." *United States v. Gates*, 709 F.3d 58, 69 (1st Cir. 2013) (citing *United States* v. *Butt*, 731 F.2d 75, 80 (1st Cir. 1984)). "[S]uch statements 'are more likely to be reliable than later versions prompted by second thoughts.' " *Id.* at 70 (quoting *United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003)). Thus, the statements "are accorded a presumption of truthfulness, which is not overcome in the absence of 'credible, valid reasons why a departure from those earlier contradictory statements is now justified.' " *Hernández-Hernández* v. *United States*, 904 F.2d 758, 762 (1st Cir. 1990) (quoting *Butt*, 731 F.2d at 80).

Claudio's argument also assumes that because he was in prison when the conspiracy began he could not have participated in it until his release. Although the Court is not assessing the credibility of this statement, the fact that Claudio was in prison does not preclude him from participating in a drug trafficking conspiracy. *See e.g., United States v. May*, 343 F.3d 1, 8 n.4 (1st Cir. 2003) (conspiracy continued even after defendant was in prison during conspiracy). Even if Claudio's participation in the conspiracy would have begun by or shortly after December 2007, still the drug quantity he stipulated to was much less than the total amount distributed during the span of the conspiracy, or the time in which petitioner admits having participated in.

Finally, in calculating Claudio's sentence, the Court determined the drug quantity specifically attributable to Claudio, as established by Claudio's own admissions, in court, his stipulation within the pea agreement, and subsequent statements under oath at the plea colloquy. See *United States v. Santos-Rivera*, 726 F.3d 17, 29 (1st Cir. 2013) ("When sentencing a participant in a drug-trafficking conspiracy, the district court must make an individualized

finding concerning the quantity of drugs attributable to, or reasonably foreseeable by, the offender.") *(citations omitted)*. Claudio has offered no reasons to question the Court's finding.

4.     **RDAP Program**

"The RDAP program exists pursuant to a statute that grants discretion to the BOP to provide alternative conditions of confinement for prisoners who have completed the program." *Richardson v. Joslin*, 501 F.3d 415, 417 (5th Cir. 2007) (citing 18 U.S.C. § 3621(e)(2)(A)). Claudio asserts that, before he signed the plea agreement, his defense counsel told him that "he would be eligible for further reduction of his sentence if he participated in the existing [RDAP]. . ." **ECF No. 1** at 12. However, Claudio claims that, because the Court sentenced him according to a 2-level firearm enhancement, he is considered a violent criminal offender and cannot participate in these types of programs.

As the government concedes, **ECF No. 10** at 13-14, Claudio appears to be ineligible for the RDAP, because inmates "whose current offense is a felony . . . [t]hat involved the carrying, possession, or use of a firearm or other dangerous weapon. . ." are ineligible for the program. 28 C.F.R. § 550.58(a)(1). Thus, if his defense counsel did advise Claudio that he would be eligible for RDAP, he was mistaken.

Nonetheless, counsel's alleged error does not rise to the level of unreasonableness or prejudice warranting habeas relief. Claudio has not shown that his counsel's alleged deficient performance prejudiced him, because it is not probable that, had his defense counsel correctly advised him regarding the RDAP, Claudio would have refused to plead guilty and insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in assessing prejudice, a court may

consider the likelihood that correcting an alleged error may have led defendant to change his

plea). As evidenced by his stipulations within the plea agreement and the advice he received at

the change of plea hearing, Claudio was well aware that the sentencing recommendations

contained in the plea agreement were only that—recommendations. As evidenced by the record,

no stipulations were made regarding conditions of confinement. Furthermore, during his

change of plea colloquy Claudio also testified that no one had made other promises to him,

besides those that were in the plea agreement. **ECF No. 3069** at at 7:23-25. Claudio's agreement

is silent as to any potential rehabilitation programs, including RDAP, and the record is void of

any evidence establishing that a recommendation to the Bureau of Prisons for him to participate

in a specific drug-addiction rehabilitation program as a motivating factor for his decision to

plead guilty. It is a well-established principle that even if a sentencing court recommends that a

defendant participate in a rehabilitation program—as the Court did for Claudio, *id.,* **ECF No.**

**3006** at 15:16-20—the authority to assign a prisoner to the RDAP lies solely with the Bureau of

Prisons. *See United States v. Quiñones Meléndez*, 229 F.3d 1134 (1st Cir. 2000); *see also* 18 U.S.C. §

3621. The Court may recommend but has no authority to order the Bureau of Prisons to admit

a prisoner to a particular program. Thus, once again, the clear record before the Court

undermines Claudio's claims of ineffective assistance of counsel.

**D.      Summary of Claudio's claims**

        In sum, each of Claudio's arguments for habeas relief conveniently disregards the

statements he made in open court, as well as the stipulations he entered when signing the plea

agreement Instead, Claudio asks the Court to disregard all his previous admissions and find

that counsel provided ineffective assistance.

However, "courts cannot operate on the assumption that parties feel free to lie with

impunity in response to a judge's interrogation." *United States v. Alegría,* 192 F.3d 179, 186 (1st

Cir. 1999). Claudio has not shown a single reason why the Court should disregard the statements

he made during the change of plea colloquy, which carry a strong presumption of truth. *See*

*United States v. Santiago Miranda,* 654 F.3d 130, 138 (1st Cir. 2011) (quoting *United States v. Torres–*

*Rosario,* 447 F.3d 61, 67 (1st Cir. 2006)) (citing *United States v. Alegría,* 192 F.3d 179, 186 (1st Cir.

1999) ("[C]ourts cannot operate on the assumption that parties feel free to lie with impunity in

response to a judge's interrogation.")). Accordingly, the Court finds that petitioner's allegations,

at best, are disingenuous and refuted by the record. As a result, Claudio's habeas petition, **ECF**

**No. 1**, is **DENIED.**

## VI.    Certificate of Appealability

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must

issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the

applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable

jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, because petitioner has not

demonstrated that he was denied a constitutional right, the Court finds that petitioner is not

entitled to a COA. Thus, the Court will not grant petitioner a COA pursuant to Rule 11(a) of the

Rules Governing Section 2255 Proceedings. Petitioner may still seek a certificate directly from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22(b)(1).

**VII.    Conclusion**

For the reasons stated above, the Court hereby **DISMISSES** Rafael Claudio-Zayas's habeas petition, **ECF No. 1**. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of July, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**